| | |
|---|---|
| Judge: | Marc L. Barreca |
| Chapter: | 7 |
| Hearing Date: | December 17, 2020 |
| Hearing Time: | 9:30 a.m. |
| Hearing Site: | Telephonic |

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re:<br><br>PAKIE V. PLASTINO<br><br>Debtor. | Case No. 17-11760-MLB |
| RONALD BROWN, Trustee<br><br>     Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY,<br><br>     Defendant. | Adversary Case #20-01012-MLB<br><br>TRUSTEES' REPLY IN SUPPORT OF TRUSTEES' MOTION FOR SUMMARY JUDGMENT |

Plaintiffs Rigby and Brown (collectively hereinafter "Trustees") hereby reply to Deutsche Bank's Response [Dkt. # 30] ("Bank's Response") to the Trustees' Motion for Summary Judgment [Dkt. # 27] ("Trustees' MSJ").

**I.**     **The *Merceri* Decision Does Not Control and Can be Distinguished Because (Unlike this Case) the Note Obligor in *Merceri* Initiated the Bankruptcy Tolling Events.**

In the Bank's Response, Deutsche Bank ("Bank") asserts that the Trustees "do not come to grips with RCW 4.16.230 or *Merceri*."[1] Bank's Response, 10:9. The Trustees assert that it is the Bank who has failed to come to grips with the undisputed facts in this case which

---

[1] *Merceri v. Deutsche Bank, AG*, 2 Wn.App.2d 143 (2018)

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS'                                                                               WOOD & JONES, P.S.
MOTION FOR SUMMARY JUDGMENT                                                                                          303 N. 67TH STREET
                                                                                                                                                                 SEATTLE, WA 98103
Page | 1                                                                                                                                                                  (206) 623-4382

distinguish it from *Merceri.* That is, in this case, unlike in *Merceri*: (1) the obligor under the Note, Pakie Plastino ("Plastino") <u>did not initiate</u> the bankruptcy tolling event; and (2) the bankruptcy filing by a non-liable third party (which may stay an action under the Deed of Trust) cannot stay an action under the Note against its maker. In short, it is only the actions of the parties to the Note which can serve to re-start or toll its statute of limitations. The actions of non-parties to the Note have no impact on its statute of limitations.

It is important to emphasize first that, in Washington, through the enactment of RCW 7.28.300, the Washington legislature has expressly provided that the statute of limitations on a deed of trust is determined strictly by reference to the statute of limitations on the underlying note. Thus, if the statute of limitations expired under the Note, the Deed of Trust against the Riviera Property can no longer be enforced, even if there were events which stayed the enforcement of the Deed of Trust (but not the Note). Here, unlike *Merceri*, Plastino, the obligor under the Note, <u>did not initiate</u> the bankruptcy tolling event relied upon by the Bank, i.e., the bankruptcy filing of Olga Stewart Plastino ("Stewart") ("Stewart Bankruptcy"). As such, the Stewart Bankruptcy did not toll the statute of limitations under the Note of Plastino.

First, the confirmed plan in the Stewart Bankruptcy ("Plan") provided in pertinent part: "Nothing in the plan affects or prejudices Pakie Plastino's <u>rights</u> and interests in the property." Declaration of Geoffrey Groshong in Support of Trustees' Reply in Support of Trustees' Motion for Summary Judgment ("Groshong Reply Declaration"), Exhibit 1, at 4 (emphasis added).

Second, it is only the actions of the parties to the Note which can impact whether its statute of limitations has been re-set or tolled. The actions of outsiders to the Note cannot do so. For a writing to be sufficient to acknowledge a debt and thus re-start the statute of limitations, it must be signed by a party to the written instrument. *See* RCW 4.16.280. Thus,

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Page | 2

WOOD & JONES, P.S.
303 N. 67TH STREET
SEATTLE, WA 98103
(206) 623-4382

Case 20-01012-MLB    Doc 34    Filed 12/14/20    Ent. 12/14/20 23:15:17    Pg. 2 of 12

here, it is only the actions of Plastino which can have an impact on the statute of limitations of the Note[2].

Third, this outcome comports with fairness and equity. If a third-party bankruptcy filing (that stays only enforcement of a deed of trust but not the note it secures) somehow extends the statute of limitations of the note, the holder of the note would then receive a windfall at the expense of the debtor's right to have his note timely enforced or barred by the statute of limitations. As previously noted by the Trustees, if a junior lienholder or tenant of a deed of trust property were to file a Chapter 11 bankruptcy, the automatic stay would prevent the enforcement of the deed of trust, <u>but not enforcement of the note against the contractual obligor</u>. As such, a bankruptcy filing by a subordinate (non-liable) lienholder against the property cannot toll the statute of limitations for the holder of the note against its maker (who has not filed bankruptcy). If it did, this would mean that the unilateral actions of non-liable third parties could extend the statute of limitations of the contractual note obligor. That is not the law and was not an issue that was presented to or addressed by the court in *Merceri*

For example, a mother separately obtains a loan to purchase a property which is evidenced by a note (signed by only the mother) and a deed of trust (again signed by only the mother) against the purchased property. Subsequent to the loan's maturity, the mother conveys the purchased property to her daughter who does not assume the matured loan. The daughter then files a Chapter 11 bankruptcy, schedules the purchased property as an asset, and gives the mother's lender notice. Though stayed by the daughter's Chapter 11 from foreclosing the deed of trust against the purchased property, the lender is not stayed from suing the mother under the matured note and obtaining a judgment thereunder before the

---

[2] Based on the Bank's submissions, the last restart or tolling event taken by Plastino was on August 27, 2010. So the issue here is whether somehow the Stewart Bankruptcy tolled the Note of Plastino.

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS'  
MOTION FOR SUMMARY JUDGMENT

Page | 3

WOOD & JONES, P.S.  
303 N. 67TH STREET  
SEATTLE, WA 98103  
(206) 623-4382

Case 20-01012-MLB    Doc 34    Filed 12/14/20    Ent. 12/14/20 23:15:17    Pg. 3 of 12

six-year statute of limitations for the matured note expires. If done, this would have the effect of extending the liability of the matured note against the purchased property by converting it to a judgment which would continue to be enforceable against the purchased property for ten years from entry and possibly extended thereafter for ten additional years. *See* RCW 6.17.020. In short, the daughter's Chapter 11 bankruptcy could not toll the statute of limitations under the matured note, which is the only statute of limitations which matters with respect to the enforcement of the deed of trust against the purchased property. *See* RCW 7.28.300.

Here, the only distinction from the above fact pattern is that Plastino, and the marital community, discharged in bankruptcy their liability under the Note. This is a distinction without a difference. Plastino's discharge (and the Stewart Bankruptcy stay) did not preclude the Bank from proceeding with an action (before the statute of limitations expired) against Plastino for the sole purpose of determining his liability under the Note and "upon which the damages would be owed by another party". *See Arreygue v Lutz*, 116 Wn.App. 938 (2003). Such an action would have preserved the liability of the Note against the Riviera Property for ten years from entry of judgment and then ten additional years thereafter. However, it is undisputed that this did not occur here and that, instead, the statute of limitations for determining Plastino's liability under the Note expired no later than August 27, 2016.

**II.  Any post-discharge acknowledgement or payment by Plastino only serves to reset the statute of limitation on the accelerated Note, and cannot serve to de-accelerate the Note[3].**

A note accelerates after bankruptcy discharge because no further payments can come due because the discharge injunction eliminates personal liability to prevent any future installments coming due. 11 U.S.C. § 524(a). *See Taylor v. PNC Bank, N.A.* ("*Taylor*"), C19-1142-JCC, 2020 WL 4431465, at *4 (W.D. Wash. July 31, 2020). For a debtor's personal liability to

---

[3] As discussed herein, the actions of Stewart cannot not impact the statute of limitations on the Note.

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Page | 4

WOOD & JONES, P.S.
303 N. 67TH STREET
SEATTLE, WA 98103
(206) 623-4382

Case 20-01012-MLB    Doc 34    Filed 12/14/20    Ent. 12/14/20 23:15:17    Pg. 4 of 12

extend after the entry of a discharge, an agreement must be made between the creditor and the debtor, and is only enforceable if the agreement is reached before the entry of a discharge and court approval[4]. 11 U.S.C. § 524(c). Agreements between a debtor and creditor reached after the entry of a discharge order that are based, at least in some portion, on a discharged debt are invalid. *In re Lopez*, 345 F.3d 701, 710 (9th Cir. 2003). This is in recognition that debtors were in need of protection against aggressive creditors from trying to avoid the requirements of Section 524(c) by negotiating reaffirmation terms without complying with the statutory safeguards. *Id.* The Bank's Response fails to grasp that the lack of *in personam* liability bars any installment coming due by operation of law, absent a valid reaffirmation agreement, and this misunderstanding is fatal to each of the arguments asserted in the Bank's Response that there was or could have been a de-acceleration of the Note after Plastino received his discharge. *See Taylor*, 2020 WL 4431465, at *4 (holding that payments post-discharge can only serve to restart the six-year statute of limitation on the accelerated debt because there were no present or future payments that could have been acknowledged).

The Bank's Response first asserts that RCW 61.24.090(b)(3) supports its contention the Note was de-accelerated. Bank's Response, 14:20-22. Though a debtor may be able to cure a default to avoid a trustee's sale, the statute does not, and cannot, reinstate *in personam* liability discharged in bankruptcy. Without the *in personam* liability a debt cannot be de-accelerated under Washington law. Furthermore, the RCW cited in the Bank's Response requires the debtor to cure ***all*** defaults before de-acceleration occurs. RCW 61.24.090(b)(3). Here, the debt was never brought current as Plastino's attempts at modifications were rejected by the Bank [*see* Exhibits 1 and 2 to Declaration of Geoffrey Groshong, Dkt. # 32], and there is

---

[4] Of course, debts can also survive discharge if they meet the statutory requirements of Section 523. Because there are no allegations the Note falls under a provision of Section 523, and because the Bank did not bring an action under Section 523, its sections are not addressed here.

| TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT | WOOD & JONES, P.S. 303 N. 67TH STREET SEATTLE, WA 98103 |
|---|---|
| Page | 5 | (206) 623-4382 |

nothing in the record to show Plastino ever brought the Note current.  The Note was never de-accelerated, and could not have been de-accelerated, under RCW 61.24.090 because it was never reaffirmed by Plastino under 11 U.S.C. § 524(c).

The Bank's Response next asserts a lender can waive acceleration, by sending monthly statements and accepting payments, and goes so far as to posit a creditor can do so unilaterally.  Bank's Response, 14:23 – 15:8.  Again, this argument fails to address the elimination of a debtor's *in personam* liability through bankruptcy.  To take the Bank's "waiver of acceleration" argument to the logical extreme, a creditor could force a debtor's reaffirmation of a debt simply by sending statements and accepting payments, despite the clear statutory requirements of Section 524(c).  Furthermore, the assertion that a post discharge agreement can de-accelerate a note was rejected in *Lopez* and *Taylor*.

The Bank's last de-acceleration argument in its Response is that, somehow, a discharged debt can be de-accelerated and cured through a subsequent bankruptcy.  Bank's Response, 15:9-12.  This argument is a red herring because it ignores the subsequent bankruptcy in this case filed by a non-party to the discharged Note, as discussed below.  This argument further conflates the cure of a default on a purely *in rem* claim that is not barred by the statute of limitations with how a claim barred by the statute of limitations would be treated through the claims allowance process as a predicate to determine how a claim can be treated in a plan of reorganization.  The reason a discharged debt is still a claim in a subsequent restructuring is because the definition of "claim" in the Bankruptcy Code is broad, and includes claims secured by property of the estate (such as non-recourse debts).  *Johnson v. Home State Bank*, 501 U.S. 78, 83-83 (1991).

What is missing from the Bank's analysis of *Johnson* is what happens when the discharged debt is barred by the statute of limitations, like the Note is here.  In that situation,

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Page | 6

WOOD & JONES, P.S.
303 N. 67TH STREET
SEATTLE, WA 98103
(206) 623-4382

Case 20-01012-MLB    Doc 34    Filed 12/14/20    Ent. 12/14/20 23:15:17    Pg. 6 of 12

the "claim" of the secured creditor would be disallowed under Section 502(b)(1) as unenforceable under applicable non-bankruptcy law, making the lien subject to avoidance under Section 506(d). The latter scenario is identical to the case at bar. Because enforcement of the Note is barred by the statute of limitations it is not an **allowable** claim, and the lien is avoidable under Section 506(d) as a result. This is the exact relief the Trustees seek in this proceeding.

Once an installment debt has been discharged, there is a single statute of limitation for the accelerated debt. See *Taylor*. Because Plastino did not reaffirm the Note, it could never have been de-accelerated because no future payments could come due.

### III. Stewart's Confirmed Plan Does Not Affect the Statute of Limitations of Plastino's Note.

A. Stewart is not an Obligor on the Note.

The Bank argues that Stewart's confirmed Plan bound her to the "obligation" and restarted the limitations period. Bank's Response, 11:17-18. And for the first time, the Bank asserts that Stewart's confirmed Plan is a new contract secured by the Deed of Trust against the Property. Bank's Response, 13:10-12. Without ever directly stating so, the Bank is necessarily arguing that Stewart's confirmed Plan modified the Note and the underlying Deed of Trust. But Olga Stewart was never an obligor to the Note, nor is she a grantor under the Deed of Trust. And for a writing to acknowledge a debt sufficient to restart the statute of limitations it must be signed by **a party to the written instrument** whose statute of limitations is at issue. RCW 4.16.280 (emphasis added). Because the Note was signed by Plastino prior to his marriage to Stewart, and Stewart never signed or assumed the obligation under the Note, the debt was, and remained, Plastino's separate obligation. *See* RCW 26.16.200 (debts incurred prior to marriage are presumptively separate obligations, and there is no liability for the non-debtor spouse or community). Because Stewart is not a party to the

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Page | 7

WOOD & JONES, P.S.
303 N. 67TH STREET
SEATTLE, WA 98103
(206) 623-4382

Case 20-01012-MLB    Doc 34    Filed 12/14/20    Ent. 12/14/20 23:15:17    Pg. 7 of 12

written instrument, i.e., the Note, any statement or action of Stewart does not affect the statute of limitations of the Note under the plain meaning of RCW 4.16.280.  Only Plastino's actions could have an impact on the statute of limitations for the Note.

The Bank cites a number of cases for the unremarkable proposition that a confirmed plan constitutes a new contract [Bank's Response, 11:19 – 12:10], although these cases all are based on the new contract of the plan replacing an old obligation of the debtor.  And here, there *was* no old obligation because Stewart was not an obligor on the Note.  None of these cases support the Bank's argument that Stewart's confirmed Plan was a new contract restructuring Plastino's separate obligation on the Note.  And none of them support the Bank's novel proposition that Stewart's confirmed Plan was a new contract secured by the Deed of Trust as to which Plastino was the grantor.  The Bank asserts that Stewart's confirmed Plan is an acknowledgement that restarted the statute of limitations on the Note.  But none of the Bank's cited cases stand for the proposition that Stewart's confirmed Plan could modify or replace a written contract (the Note) to which she was not a party, or cause the Deed of Trust to become security for Stewart's Plan obligations.

The Bank cites *In re Dial Bus. Forms, Inc.,* 341 F.3d 738, 74s n.3 (8th Cir. 2003) for the proposition that "[t]he effect of plan confirmation is to replace the prior obligations of the Chapter 11 debtor with the obligations provided in the plan."  Bank's Response, 12:3-5.  But Stewart had <u>no prior obligation</u> on the Note, so *Dial Bus. Forms* is inapposite.  The Bank quotes *First Nat'l Bank of Oneida, N.A. v. Brandt,* 887 F.3d 1255, 1260 (11th Cir. 2018) as providing that "as a result of confirmation and discharge, '[t]he initial claim filed by the creditor during the pendency of the case is dead, replaced by the new contractual obligation created by the creditor's treatment under the confirmed plan.'"  Bank's Response, 12:5-8.  But as the Bank correctly pointed out in its objection to Stewart's proposed Plan (*see* Declaration of Denice

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Page | 8

WOOD & JONES, P.S.
303 N. 67TH STREET
SEATTLE, WA 98103
(206) 623-4382

Case 20-01012-MLB    Doc 34    Filed 12/14/20    Ent. 12/14/20 23:15:17    Pg. 8 of 12

Moewes in Support of Motion for Summary Judgment [Dkt. # 28] (the "Moewes Declaration"), Exh. 16), the obligations owed by Plastino did not constitute a claim in the Stewart bankruptcy proceeding. *First Nat'l Bank* does not apply.

The Bank cites to *In re Payne,* 523 B.R. 560, 579 (Bankr. E.D. Tenn. 2018) for the proposition that the confirmation of a plan established a new maturity date and a new statute of limitations. Bank's Response, 12:12-17. But in *Payne* both debtors were obligors on the promissory notes in question. *Payne*, at 563-564. So, *Payne* does not apply here, where Stewart was not an obligor on the Note. The Bank also cites to *Clay v. Clay (In re Clay)* 2010 WL 547165 for the proposition that a confirmed plan creates a new statute of limitations. Bank's Response, 12:19 – 13:1. Here again, the Bank's authorities are inapplicable. *Clay* provides that "[i]t is well-settled that a confirmed plan creates a new contract between the debtor and interested parties, which replaces pre-petition obligations with a new contractual obligation in accordance with the creditor's treatment under the confirmed plan." But again, Stewart was not the obligor on the Note, and there was no pre-petition obligation to replace. The Bank then cites to *In re Affordable Housing Development Corp.,* 175 B.R. 324, 329 for the unremarkable proposition that a chapter 11 plan should generally be interpreted as a contract.

None of these cases overcomes the fact that Stewart is not an obligor on the Note and could not, under her Chapter 11 Plan, acknowledge or restart the statute of limitations on it.

B. <u>The Stewart Plan Cannot Resurrect the Discharged Note That was not Reaffirmed</u>.

Plastino married Stewart on September 27, 2003. Moewes Declaration, Exh. 5. Plastino filed for bankruptcy on March 24, 2005 ("2005 Bankruptcy"), and as such he brought the marital community into his bankruptcy as well. Moewes Declaration, Exh. 7. Plastino and the community received a discharge on February 22, 2007 ("2007 Discharge"). Moewes Declaration, Exh. 9.

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS'  
MOTION FOR SUMMARY JUDGMENT

Page | 9

WOOD & JONES, P.S.  
303 N. 67TH STREET  
SEATTLE, WA 98103  
(206) 623-4382

Case 20-01012-MLB    Doc 34    Filed 12/14/20    Ent. 12/14/20 23:15:17    Pg. 9 of 12

Where only one spouse files for bankruptcy, 11 U.S.C. § 524(a)(3) imposes a discharge injunction that protects not only the community property interest of the debtor, but also the interest of the non-debtor spouse. Further, this discharge protects all community property acquired post-bankruptcy. *In re Kimmel*, 378 B.R. 630 (9th Circuit BAP 2007) *aff'd*, 302 F. App'x 518 (9th Cir. 2008). This means that when Stewart obtained an interest in the community property, the discharge still protected her and the Property.

The Bank did not move for or obtain an order reaffirming the Note in the 2005 Bankruptcy. As such, all parties, including the Bank, were prohibited from seeking to later impose personal liability or otherwise collect upon the discharged Note. *In re Lopez*. Nonetheless, that is exactly what the Bank contends somehow occurred in the Stewart bankruptcy. It claims that Stewart's confirmed Plan somehow resurrected the *in personam* liability of the discharged Note upon Stewart, who was not an obligor on the Note, Plastino, and the marital community.

When Stewart filed her bankruptcy, the liability of the community and Plastino under the Note had already been discharged. The Bank did not obtain an order reaffirming the Note, so Stewart's confirmed Plan did not and could not have resurrected liability under the Note without violating the discharge injunction. *In re Lopez*.

C. <u>The Bank is Barred by Judicial Estoppel from Asserting that Stewart's Confirmed Plan is a New Contract</u>.

The Bank now argues that Stewart's confirmed Plan bound her to the "obligation" and restarted the limitations period. Bank's Response, 11:17-18. And for the first time, the Bank asserts that Stewart's confirmed Plan is a new contract <u>secured by the Deed of Trust against the Property</u>. Bank's Response, 13:10-12. However, the Bank took the opposite position in the Stewart bankruptcy. In its objection to the first amended proposed plan of reorganization filed by Stewart in her bankruptcy, the Bank acknowledged that Stewart is not personally liable

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Page | 10

WOOD & JONES, P.S.
303 N. 67TH STREET
SEATTLE, WA 98103
(206) 623-4382

Case 20-01012-MLB    Doc 34    Filed 12/14/20    Ent. 12/14/20 23:15:17    Pg. 10 of 12

under the Note or Deed of Trust, and that she was not a party to the written instruments. Moewes Declaration, Exh. 16. The Bank's objection argued that the proposed plan impermissibly sought to discharge the liability of a non-Debtor, both on an *in personam* level and an *in rem* level. Specifically, the Bank's objection asserted the proposed plan violated 11 U.S.C. § 524(e) and could not be confirmed, because Stewart was not a party to either the Note or the Deed of Trust. Moewes Declaration, Exh. 16 at 5: 5-15 and 6:23-28. Consistent with the Bank's objection, the confirmed Plan provided that "[n]othing in this plan affects or prejudices Pakie Plastino's rights and interests in the Property." Groshong Reply Declaration, Exh. 1 at 4. The Bank signed off on the Agreed Order Confirming Third Amended Plan and the Amended Agreed Order Confirming Third Amended Plan. Groshong Reply Declaration, Exh. 2 and 3.

Having argued that the Bank's rights under the Note and Deed of Trust could not be affected by Stewart's bankruptcy case, and having agreed, twice, to the entry of orders confirming Stewart's third amended Plan, which provided that "[n]othing in this plan affects or prejudices Pakie Plastino's rights and interests in the Property[.]" (Groshong Reply Declaration, Exh. 1 at 4), the Bank has now changed its position, to the unfair detriment of Plastino's Trustee and the bankruptcy estate.

The Bank is barred from taking an inconsistent position on the same issue, thereby gaining an unfair advantage, under the doctrine of judicial estoppel. *See Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir.), citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Page | 11

WOOD & JONES, P.S.
303 N. 67TH STREET
SEATTLE, WA 98103
(206) 623-4382

on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"). *New Hampshire,* at 749. Factors that support a finding of judicial estoppel may include whether the party asserting an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire,* at 750.

The Bank was successful in the Stewart bankruptcy in its assertion that the bankruptcy could not affect Plastino's rights and interests in the Riviera Property. It should not be allowed to profit at the expense of Plastino's bankruptcy estate by taking an inconsistent position now.

## IV. CONCLUSION

The Trustees' MSJ should be granted.

Dated this 14th day of December, 2020.

| | |
|---|---|
| */s/ Thomas S. Linde* | */s/ Geoffrey Groshong* |
| Thomas S. Linde, WSB #14426 | Geoffrey Groshong, WSB #6124 |
| Schweet, Linde & Coulson PLLC | Groshong Law PLLC |
| *Co-counsel for J. Rigby, Trustee* | *Counsel for R. Brown, Trustee* |

*/s/ Denice E. Moewes*
Denice Moewes, WSB# 19464
Wood & Jones PS
*Co-counsel for J. Rigby, Trustee*

TRUSTEES' REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Page | 12

WOOD & JONES, P.S.
303 N. 67TH STREET
SEATTLE, WA 98103
(206) 623-4382

Case 20-01012-MLB    Doc 34    Filed 12/14/20    Ent. 12/14/20 23:15:17    Pg. 12 of 12