Below is a Memorandum Decision of the Court.



**Marc Barreca**
**U.S. Bankruptcy Court Judge**

(Dated as of Entered on Docket date above)

_____

_

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:

Pakie Vincent Plastino,

                         Debtor.

Case No. 17-11760-MLB

Adv. No. 20-01012-MLB (consolidated with 20-01013-MLB)

In re:

Ronald G. Brown, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Pakie V. Plastino,

                         Plaintiff,

and

James Rigby, solely in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of Debra L. Wilson,

                         Plaintiff,

v.

Deutsche Bank National Trust Company as Indenture Trustee for Impac Real Estate Asset Trust Series 2006-SD1,

                         Defendant.

**MEMORANDUM DECISION**

# INTRODUCTION

This matter is before me on cross motions for summary judgment in consolidated adversary proceedings 20-01012-MLB and 20-01013-MLB. Ronald G. Brown and James Rigby (hereafter collectively the "Plaintiffs") seek to avoid the lien of Deutsche Bank National Trust Company as Indenture Trustee for Impac Real Estate Asset Trust Series 2006-SD1 (hereafter the "Defendant") under 11 U.S.C. § 506(d) in property of the bankruptcy estate of Pakie Plastino.

Plaintiffs filed their Motion for Summary Judgment asserting that the statute of limitations on Defendant's installment note (hereafter the "Note") has run, rendering the Note unenforceable. *See* Dkt. No. 27. Defendant filed its Motion for Summary Judgment on Ronald G. Brown and James Rigby's Complaint, seeking a determination that the statute of limitations on the Note it holds has not run. *See* Dkt. No. 20. Both parties filed responses and replies supporting their positions. *See* Dkt. Nos. 30, 33, 34, and 36.

I heard oral argument on December 17, 2020 and took the matter under advisement. Having reviewed the relevant pleadings and having heard arguments from the parties, and otherwise having good cause, I conclude that the statute of limitations has not run, and both grant the Defendant's summary judgment motion and deny the Plaintiffs' summary judgment motion.

# JURISDICTION

I have jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(k) and 1334.

# FACTS

On September 13, 2002, Mr. Plastino signed the Note in the amount of $1,000,000.00. Dkt. No. 20, Exhibit 1. The Note obligation is secured by a Deed of Trust encumbering real property located at

11740 Riviera Place NE, Seattle, WA 98125 (hereafter the "Property"). Dkt. No. 20, Exhibit 2. Defendant assertedly holds the Note secured by the Deed of Trust.[1]

On or about September 23, 2003, Mr. Plastino married Olga Stewart.[2] After Mr. Plastino and Ms. Stewart were married a series of transfers resulted in the property being community property.

On March 24, 2005, Mr. Plastino filed a Chapter 11 bankruptcy, which was later converted to a Chapter 7 (hereafter "Plastino's 2005 Bankruptcy," Case No. 05-13695-TTG). On February 22, 2007, Mr. Plastino received a Chapter 7 discharge.

At oral argument, Plaintiffs and Defendant agreed that the last payment on the Note was made August 2, 2010. On August 27, 2010, Mr. Plastino executed a Loan-Modification Application. Dkt. No. 22, Exhibit 11.

On September 22, 2010, Ms. Stewart filed a Chapter 13 bankruptcy. On November 10, 2010, her case was converted to a Chapter 11 (hereafter the "Stewart Bankruptcy," Case No. 10-21227-MLB). I confirmed Ms. Stewart's Chapter 11 Plan on November 27, 2012 (hereafter "Stewart's Chapter 11 Plan"). Under Stewart's Chapter 11 Plan, the automatic stay remained in place post-plan confirmation. The plan stated that Defendant could enforce its interest in the Property and that the stay would terminate thirty days after a notice of default to Ms. Stewart and her attorney if any default was not timely cured. Defendant sent notice of default on November 29, 2016. Ms. Stewart did not cure the default. Therefore, the automatic stay terminated on December 29, 2016.

Approximately thirty-six days later, on February 3, 2017, Mr. Plastino filed for bankruptcy in the United States Bankruptcy Court for the Central District of California (hereafter the "California Bankruptcy"). On March 27, 2017, the California Bankruptcy was dismissed. Approximately twenty-two days later, on April 18, 2017, Mr. Plastino filed the present bankruptcy.

---

[1] At hearing, Plaintiffs raised an issue as to whether Deutsche Bank National Trust Company is indenture trustee for the trust named in the complaint or whether the Note is presently held for a different trust. Resolution of this issue is beyond the scope of these summary judgment motions.

[2] I note that Olga Stewart has indicated that she prefers being referred to as "Olga Plastino," but for purposes of clarity, as she filed her bankruptcy under the name "Olga Stewart," she will be referred to as Ms. Stewart. No disrespect is intended.

## ANALYSIS

### I. Legal Standard

#### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

When a properly supported motion for summary judgment has been presented, the adverse party "may not rest upon the mere allegations or denials of his own pleading." *Id.* Rather, the non-moving party must set forth specific facts demonstrating the existence of a genuine issue for trial. *Id.* at 256. While all justifiable inferences are to be drawn in favor of the non-moving party, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citations omitted).

#### B. Washington Limitation of Actions Provisions

In Washington State, "[e]xcept as otherwise provided in this chapter, and except when in special cases a different limitation is prescribed by a statute not contained in this chapter, actions can only be commenced within the periods provided in this chapter after the cause of action has accrued." RCW 4.16.005.

Further, "[w]hen the commencement of an action is stayed by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action." RCW 4.16.230.

In 2010, when the last payment was made on the Note by Mr. Plastino, RCW 4.16.270 stated:

> When any payment of principal or interest has been or shall be made upon any existing contract, whether it be a bill of exchange, promissory note, bond or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made.

RCW 4.16.270 (amended July 28, 2019).

## II. Statute of Limitations Analysis

### A. The *Edmundson* Dicta Issue

The Plaintiffs assert that the discharge Mr. Plastino received in his 2005 bankruptcy triggered, in effect, an acceleration of the Note, starting with the payment due before his Chapter 7 discharge-- approximately February 1, 2007. The Defendant asserts that no statute or binding Washington case law establishes acceleration of a debt as a consequence of a bankruptcy discharge. Additionally, Defendant asserts that regardless of whether the discharge in Plastino's 2005 Bankruptcy triggered an acceleration of the debt, the statute of limitations has not run in this case as (1) the last payment on the Note was made August 2, 2010; (2) Mr. Plastino acknowledged the debt obligation on August 27, 2010, in a loan-modification application; and (3) the Stewart Bankruptcy subsequently tolled the statute of limitations.

The Plaintiffs' bankruptcy discharge acceleration argument is based on the following statement in a Washington Court of Appeals case:

> [T]he statute of limitations for each subsequent monthly payment accrued on the first day of each month after November 1, 2008 until the Edmundsons no longer had personal liability under the note. They no longer had such liability as of the date of their bankruptcy discharge, December 31, 2013. Thus, from December 1, 2008 through December 1, 2013, the statute of limitations accrued for each monthly payment under the terms of the note as each payment became due.

*Edmundson v. Bank of Am.*, 194 Wash. App. 920, 931, 378 P.3d 272 (2016); *see also Jarvis v. Fannie Mae*, 726 F. App'x 666, 666 (9th Cir. 2018); *Hernandez v. Franklin Credit Mgmt. Corp.*, Case No. C19-0207-JCC, 2019 WL 3804138, *2, 2019 U.S. Dist. LEXIS 136543, *4–6 (W.D. Wash. Aug. 13, 2019), *aff'd sub nom. Hernandez v. Franklin Credit Mgmt. Corp.* (*In re Hernandez*), 820 Fed. Appx. 593 (9th

Cir. 2020); *Taylor v. PNC Bank, Nat'l Ass'n*, Case No. C19-1142-JCC, 2020 WL 4431465, *3–4, 2020

U.S. Dist. LEXIS 136599, *6–9 (W.D. Wash. July 31, 2020), *appeal dismissed sub nom. Taylor v. PNC*

*Bank, N.A.*, No. 20-35766, 2020 WL 7048194, 2020 U.S. App. LEXIS 37957 (9th Cir. Sept. 11, 2020);

*U.S. Bank NA v. Kendall*, No. 77620-7-I (consolidated with No. 77621-5, No. 77786-6, and No. 77820-

0), 2019 WL 2750171, at *4, 2019 Wash. App. LEXIS 1704, at *10–11 (Wash. Ct. App. July 1, 2019).[3]

The language Plaintiffs cite to from *Edmundson* is dicta. In *Edmundson*, Carrington Mortgage

Services, LLC (hereafter "Carrington"), appealed the trial court's grant of summary judgment in favor of

Kevin and Meche Edmundson. *Id.* at 924. The trial court permanently enjoined Carrington's trustee

sale on the grounds that the deed of trust securing the promissory note was unenforceable due to the

Edmundsons' bankruptcy discharge. *Id.* The Court of Appeals reversed and found in favor of

Carrington, holding that the bankruptcy discharge did not preclude foreclosure and that the statute of

limitations had not run. *Id.* at 926. The court provided no supporting authority for its statement that the

discharge created, in essence, an acceleration of the debt, as the Edmundsons "no longer had . . .

liability" on the note. Moreover, it was not necessary to the court's determination that the statute of

limitations on all installments was accelerated by the discharge. The court concluded that the

bankruptcy discharge did not render the note unenforceable for foreclosure and that the six-year statute

of limitations on the outstanding installments had not run. It would have reached this conclusion

whether or not the debt had accelerated by discharge.

Although the *Edmundson* court did not cite authority for the proposition that the bankruptcy

discharge accelerated the debt, in examining the appellate briefs in *Edmundson*, I note that Carrington

---

[3] I note that, with the exception of *Jarvis*, all the cases that follow the *Edmundson* bankruptcy discharge acceleration dicta are unpublished. Further, as in *Edmundson*, the bankruptcy discharge acceleration propositions in *Taylor* and *Kendall* are dicta. In *Taylor*, as the court ultimately held that the statute of limitations had restarted based on the debtors' acknowledgment of the debt, determination that there had been an acceleration upon the debtors' discharge was not necessary for the court's conclusion. Similarly, in *Kendall*, the statute of limitations had not run regardless of whether discharge accelerated the installments because the debtor acknowledged the debt, restarting the limitations period.

cited to an earlier unpublished Western District of Washington decision for that proposition. Brief of

Respondents at 13, Edmundson v. Bank of America, 194 Wash. App. 920 (2016) (No. 74016-4-1).

In the unpublished case cited by Carrington, the court states, without citation to authority:

> [T]he [borrowers] remained personally liable on the Note (and successive payments continued to be due) until January 1, 2010, when they missed that payment; they received their Chapter 7 discharge on January 25, 2010. Accordingly, the statute of limitations to enforce the Deed of Trust lien began to run on January 1, 2010.[4]

*Silvers v. U.S. Bank Nat. Ass'n*, No. 15-5480 RJB, 2015 WL 5024173, *4, 2015 U.S. Dist. LEXIS

112650, *9–10 (W.D. Wash. Aug. 25, 2015).

The acceleration by bankruptcy discharge articulated in *Silvers* and subsequent cases does not

appear to be based on any Washington statute or case law. However, in examining the briefs in *Silvers*,

the proposition was cited to the court by the lender, without any reference to authority, stating:

> [T]he Silvers remained personally liable on the Note (and installments continued coming due) until January 25, 2010, when they received their Chapter 7 discharge. Put another way, the statute of limitations on U.S. Bank's right to enforce the Deed of Trust was renewed each month default through the date of the January 1, 2010 installment payment . . . . that statue began running, <u>at the earliest</u> on January 1, 2010 (emphasis added).

U.S. Bank's Motion to Dismiss at 5, Silvers v. U.S. Bank National Ass'n, 2015 WL 5024173 (W.D.

Wash. Aug. 25, 2015), ECF 8.

The acceleration by bankruptcy discharge articulated in *Silvers* and subsequent cases does not

appear to be based on any Washington statute or case law. It is also inconsistent with the proposition

that acceleration is not automatic but requires action by the lender. *Edmundson*, 194 Wash. App. at 932.

I therefore, do not believe that the Washington Supreme Court would create a new rule

accelerating installment payment debt upon discharge in bankruptcy.[5] As the discharge in the Plastino

---

[4] I note that this language in *Silvers* is also dicta as the court's determination that the statute of limitations had not run on the outstanding installment payments would have been the same whether or not the bankruptcy discharge created an acceleration.
[5] But for my alternative conclusion that the statue of limitations was tolled by the stay in the Stewart Bankruptcy, the "acceleration by discharge" issue may well have been appropriate for certification to the Washington Supreme Court.

2005 Bankruptcy did not cause acceleration of future installments on the Note, the statute of limitations has not run.[6]

## B. Restart of Statute of Limitations

Even if the *Edmundson* bankruptcy discharge acceleration proposition is correct, the statute of limitations was restarted by the August 2, 2010 payment and by the August 27, 2010 Loan-Modification Application.

### i. The Last Payment

The parties agree that the last payment Mr. Plastino made on the Note was on August 2, 2010. Under Washington law, "the limitation shall commence from the time the last payment was made." RCW 4.16.270. Therefore, if the last payment was made on August 2, 2010, absent tolling, the statute of limitations on the Note would have run on August 2, 2016.

### ii. The Loan-Modification Application

The loan modification application (hereafter the "Application") executed on August 27, 2010, constitutes an acknowledgment of the debt. Washington case law sets forth four factors for a debt acknowledgment: (1) the acknowledgment must be in writing, (2) the acknowledgment must be communicated to the creditor, (3) the acknowledgment must recognize the existence of a debt, and (4) not indicate an intent not to pay. *See In re Tragopan Properties, LLC*, 164 Wash. App. 268, 273, 263 P.3d 613 (2011); *see also Jewell v. Long*, 74 Wash. App. 854, 856, 876 P.2d 473 (1994).

Plaintiffs assert that the Application did not restart the statute of limitations because the Defendant did not accept or agree to it. However, Plaintiffs have not cited to any Washington authority requiring that a lender accept a loan modification application for it to constitute an acknowledgment of

---

[6] Although both the *Edmundson* and *Hernandez* courts cite to *Herzog v. Herzog*, 23 Wn.2d 382, 388, 161 P.2d 142 (1945), the *Herzog* case does not establish that bankruptcy discharge causes debt acceleration. *Herzog* states that for "an obligation payable by installments the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." *Id.* The case does not address the affect of discharge in bankruptcy.

MEMORANDUM DECISION - 8

1    debt.  Therefore, the Application was a valid debt acknowledgment and restarted the statue of limitations

2    on August 27, 2010.

3                    **C. The Stewart Bankruptcy**

4            Defendant asserts that the automatic stay in the Stewart Bankruptcy tolled the statute of

5    limitations on the Note as the Defendant was stayed from foreclosing on the Property.  Plaintiffs

6    disagree.

7            Washington courts have rejected "the argument that statutory tolling under RCW 4.16.230 does

8    not apply to the bankruptcy stay because a creditor may move for relief from the stay. The bankruptcy

9    stay is 'a statutory prohibition' within the meaning of RCW 4.16.230." *Merceri v. Deutsche Bank AG*, 2

10   Wash. App. 2d 143, 154, 408 P.3d 1140 (2018), *review denied sub nom. Merceri v. Deutsche Bank Nat'l*

11   *Tr. Co.*, 190 Wn.2d 1027, 421 P.3d 457 (2018); *see also Washington Fed., Nat'l Ass'n v. Pac. Coast*

12   *Constr., LLC*, No 51197-5-II, 2018 WL 3640905, *3–4, 2018 Wash. App. LEXIS 1779, *6–9 (Wash. Ct.

13   App. July 31, 2018).

14           Plaintiffs argue that RCW 4.16.230 only applies when a stay is initiated by a holder of the note,

15   stating, "Olga Stewart was not an obligor on the Note and no actions she personally took, including

16   filing for bankruptcy, could toll the running of the six-year limitations period under the statute."  Dkt.

17   No. 33.  I disagree.  Nothing in the plain language of RCW 4.16.230 or the case law indicates that the

18   stay must have been created by an action directly involving the obligor on the Note.[7]

19           A stay was created by the Stewart Bankruptcy filing.  At the time of the filing of her bankruptcy,

20   the Property, secured by the Deed of Trust, was community property.  Property of the estate includes

21   community property.  *See* 11. U.S.C. § 541(a)(2).  The automatic stay in bankruptcy stays any action to

22   obtain possession of property of the estate or to enforce a lien against property of the estate.  *See* 11.

23   U.S.C. §§ 362(a)(3) and (5).  Therefore, the Stewart Bankruptcy triggered a statutory prohibition staying

24

25   _____

[7] I note that under 11 U.S.C. § 524(a)(2) *in personam* enforcement of the Note against Mr. Plastino was permanently stayed following his bankruptcy discharge.

MEMORANDUM DECISION - 9

enforcement of the Deed of Trust secured by the Note obligation. The statute of limitations was therefore tolled.

The Stewart Bankruptcy was filed on September 22, 2010. I confirmed Stewart's Chapter 11 Plan on November 27, 2012. The plan provided that the automatic stay was to remain in place during its pendency unless Ms. Stewart received a notice of default and failed to cure any default within thirty days of the notice. Ms. Stewart defaulted on her plan obligations, and on November 29, 2016, Defendant sent a notice of default. Ms. Stewart failed to cure the default within 30 days. Therefore, the stay in the Stewart Bankruptcy tolled the statute of limitations from September 22, 2010 through December 29, 2016.

From the restart of the statute of limitations by payment on August 2, 2010, the limitations period ran from August 2, 2010 to September 22, 2010, a total of fifty-one days.[8] The limitations period was then tolled starting on the date the Stewart Bankruptcy was filed until December 29, 2016, a total of 2,289 days. The limitations period ran again from December 29, 2016 to February 3, 2017, when Mr. Plastino filed his California Bankruptcy, a total of thirty-six days. The limitations period was tolled again upon the filing of the California Bankruptcy until the case was dismissed on March 27, 2017, a total of fifty-two days. The limitations period again ran until this bankruptcy was filed on April 18, 2017, a total of twenty-two days. Therefore, starting from August 2, 2010, the limitations period has only run, at most, a total of 109 days.

---

[8] As discussed above, acknowledgment of the debt on August 27, 2010, also restarted the limitations period.

MEMORANDUM DECISION - 10

### CONCLUSION

For the reasons previously stated, the six-year statute of limitations on the Note has not run. Therefore, I grant summary judgment in favor of the Defendant and deny the Plaintiffs' cross motion. Counsel for Defendant shall present an appropriate form of judgment.

/ / / End of Memorandum Decision / / /